IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

YRMA CHAVES LANE,

       Plaintiff,                      No. CIV S-06-0806 GGH

    vs.

MICHAEL J. ASTRUE,[1]              ORDER
Commissioner of
Social Security,

       Defendant.
_____/

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[2] For the reasons that follow, plaintiff's Motion for Judgment on the Pleadings is **GRANTED IN PART**, the Commissioner's Cross Motion for Summary Judgment is DENIED, the Clerk is directed to enter judgment for the plaintiff, and this matter is remanded to the Commissioner for further development of the record.

---

[1] Michael J. Astrue became Commissioner on February 12, 2007. Accordingly, he should be substituted as defendant in this suit. Fed. R. Civ. P. 25(d)(1). No further action need be taken by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The case is before the undersigned pursuant to 28 U.S.C. § 636(c) (consent to proceed before a magistrate judge).

1

BACKGROUND

Plaintiff, born October 1, 1959, applied on February 5, 2004 for disability insurance benefits. (Tr. at 52.) Plaintiff alleged she was unable to work since December 31, 2003, due to a brain aneurysm, subarachnoid bleeding, headaches, double vision, hearing loss, poor balance, loss of strength. (Tr. at 52, 73.)

In a decision dated November 22, 2005, ALJ Peter F. Belli determined plaintiff was not disabled. The ALJ made the following findings:[3]

> 1. The claimant has not engaged in substantial gainful activity after December 31, 2003.
>
> 2. The medical evidence establishes that the claimant has old cervical fracture, residuals from a vascular accident (headaches), and depression, but that she does not have impairment or combination of impairments listed in or

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:
> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

| | | |
|---|---|---|
| | | medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. |
| | 3. | The claimant's subjective complaints are not consistent with the evidence of record and not fully credible. |
| | 4. | The claimant retains the residual functional capacity to lift 20 pounds occasionally, and 10 pounds frequently. The claimant can sit for 8 hours, and stand and walk for eight hours, in an eight hour day. The claimant is precluded from climbing ropes, ladders, and scaffolds, and cannot work at unprotected heights or around dangerous machinery. The claimant can occasionally stoop, crawl, crouch, and kneel. The claimant's ability to understand, remember, and carry out short simple instruction is unlimited. Her ability to understand, remembers, [sic] and carry out detailed instruction in [sic] markedly limited (seriously limited but not precluded). The claimant's judgment when performing simple tasks is not limited, and slightly limited when performing detailed tasks. Her ability to work with others is not limited. The claimant's ability to respond to routine changes in the work place is slightly limited. |
| | 5. | The claimant cannot perform her past relevant work. The claimant is 46 years of age and has a 12th grade education. |
| | 6. | The framework of Rule 202.21, Appendix 1, Subpart P, Regulations No. 4, directs that the claimant is not disabled, as there are a significant number of jobs that she can perform. Examples of these jobs are order retail sales attendant, small part assembler, and general office helper. |
| | 7. | The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(e)). |

(Tr. at 24-25.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the ALJ Improperly Rejected the Credibility of Plaintiff and Her Husband; and B. Whether the Hypothetical to the Vocational Expert Was Not Supported by Substantial Evidence.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

ANALYSIS

      A. <u>Whether the ALJ Properly Assessed Plaintiff's Credibility</u>

      Plaintiff asserts that the ALJ erred in rejecting her testimony that she needs to stay in a darkened room several days a week due to her headaches.

      The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ who used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

      In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en banc). The ALJ may not find subjective complaints incredible solely because objective medical evidence does not quantify them. Id. at 345-46. If the record contains objective medical evidence of an impairment possibly expected to cause pain, the ALJ then considers the nature of the alleged symptoms, including aggravating factors, medication,

4

treatment, and functional restrictions. See id. at 345-47. The ALJ also may consider the applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) daily activities.[4]  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct, may also be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990). Absent affirmative evidence demonstrating malingering, the reasons for rejecting applicant testimony must be clear and convincing. Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Plaintiff has a history of aneurysms which may or may not be related to a cervical fracture in 1994 as a result of a motor vehicle accident.[5] (Tr. at 203.) It is notable that her father died from a rupture of an aneurysm. (Id. at 254, 280.) Plaintiff's first aneurysm burst on December 31, 2003, causing subarachnoid hemorrhaging. Surgery was performed by Dr. Steinberg, who opined on April 6, 2004, that plaintiff would be disabled for at least a year. (Tr. at 179.) On March 15, 2004, Dr. Steinberg reported that plaintiff had a remaining aneurysm for which he recommended surgery. He also noted that due to plaintiff's history, she is at risk for

---

[4] Daily activities which consume a substantial part of an applicants day are relevant. "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (quotation and citation omitted).

[5] The record elsewhere indicates the accident occurred in 1997, and states that this is when her headaches began, although they worsened after the aneurysm surgery. (Tr. at 253.)

5

1  another rupture of the remaining aneurysm.  (Id. at 140.)  It does not appear that a second surgery
2  was completed, however, but that it was being observed.  (Id. at 253.)
3          In this case, the ALJ did not give clear and convincing reasons to question
4  plaintiff's credibility.  He discussed at length the lack of specialized medical treatment or
5  diagnostic testing for her musculoskeletal complaints.  (Tr. at 22.)  However, plaintiff objects to
6  his rejection of her credibility with respect to her headache pain.  In this regard, the ALJ did not
7  mention the lack of diagnostic testing in regard to migraine headaches, but stated only:

> [T]he record does not show that the claimant reported any serious, persistent residual symptoms related to her aneurysm, and examinations have not reflected any important neurological findings.  The record does not show that the claimant reported that her pain medication is ineffective or that it causes any significant side effects, and in fact, she admitted that her headaches are improved with medication.

(Tr. at 22.)

          The lack of diagnostic testing is significant in light of plaintiff's surgery for her
first aneurysm, the recommendation of surgery for her second aneurysm, her history of cervical
fracture as a result of a motor vehicle accident, and her father's death due to an aneurysm.
Objective tests are available for migraine headaches, including those tests mentioned by the ALJ
in regard to musculoskeletal problems, such as computed tomography, x-ray, magnetic resonance
imaging, electroencephalogram, lumbar puncture, ultrasound testing, cerebral angiography,
positron emission tomography, and single-photon emission computed tomography.
www.umm.edu.   See also www.mayoclinic.com; www.ncbi.nlm.nih.gov (study finding that
objective quantitative assessment of daily functioning in migraine patients is feasible);
www.ingentaconnect.com (noting that migraine classification based solely on clinical symptoms
can be difficult, and that diagnostic testing greatly aids in objective measurement of physiology).
          The records do not indicate such diagnostic testing since plaintiff's aneurysm
surgery, despite her having been seen by neurologists, including consulting neurologist Dr.
McIntire, as well as numerous regular visits to treating physicians for headaches.  Dr. McIntire

completed a comprehensive neurological evaluation, and reviewed clinic reports.  He found that motor strength was 5/5 throughout the upper and lower extremities, fine finger movements were rapid and symmetric, and there was no drift.  Deep tendon reflexes were symmetric and normal throughout the upper and lower extremities.  Hoffman and Babinski signs were absent.  (Id. at 281.)  He concluded plaintiff's occasional blurring of vision could be a possible pre-syncope which could be related to the use of antihypertensives.  (Id. at 281.)  The exam was otherwise normal, with the exception of slight change in vibration sense of the left foot.  (Id.)  The only functional limitations placed on plaintiff from a neurological standpoint was to limit environmental exposure due to a possible syncopal episode.  She should therefore avoid working over water, at heights, or with heavy machinery.  (Id. at 282.)  It is unknown why Dr. McIntire did not mention plaintiff's headaches or recommend diagnostic studies for this purpose.  The fact that the remainder of the neurological exam was normal does not explain the headache symptoms.

There is also no indication from the other records that plaintiff was referred for diagnostic testing for headaches.  Dr. Lee performed a neurological consultation on May 3, 2004 which resulted in a diagnosis of migraines with neurological exam revealing "mild, residual right homonymous hemianopia," yet the only plan was prescribing Imitrex.  (Id. at 254.)

Although possibly noted only in regard to her musculoskeletal problems, the ALJ reasoned that plaintiff did not seek any alternative treatment such as physical or pain management therapy.  (Id.)  He added that medical practitioners had not referred plaintiff for additional diagnostic testing or hospitalization.  In fact, the surgeon who performed surgery on the first aneurysm, Dr. Steinberg of Stanford University Medical Center, recommended surgery for the second aneurysm, but it was never performed.  (Id. at 140, 253.)

Furthermore, the ALJ mischaracterized the record when he stated that it did not reflect "serious, persistent residual symptoms related to her aneurysm, and examinations have not reflected any important neurological findings."  (Id. at 22.)  In fact, important neurological

findings were not reflected due to the lack of diagnostic studies since the original aneurysm surgery, but more importantly, the history of two aneurysms alone, with surgery on one, and recommendation of surgery on the other, should constitute important findings. Additionally, plaintiff complained throughout about her headaches and that medication was not working effectively. On May 24, 2004, plaintiff was doing better, however, Imitrex only improved her headaches by ten percent. (Id. at 251.) On May 3, 2004, Dr. Lee reported plaintiff's history that her headaches began as a result of her cervical fracture from an accident in 1997, but worsened over time, causing her to go to the hospital for injections of Demerol due to nausea, vomiting, photophobia and phonophobia. Since her aneurysm surgery, her headaches occur every day, with severe headaches once per week.[6] Vicodin only provided some relief but caused pruritus (itching). (Id. at 253.) On March 18, 2005, plaintiff reported that Indocin only provided minimal improvement of the headaches, and Imitrex only helped if she took it when the headache first started. At this time, Dr. Reina decided to try Lortab and continue Imitrex. (Id. at 344.) These most recent records reflect chronic back and neck pain, as well as headaches. (Id. at 344-73.) Numerous medications were tried without success, including Endocet, (tr. at 347), MS Contin, Percocet (tr. at 348), Oxycontin (tr. at 349), morphine (tr. at 352), Effexor (tr. at 354), Vicodin (tr. at 361), Zoloft, (tr. at 367), Elavil and Methadone. (Tr. at 369). Other records show admission to the emergency room on October 14 and 28, 2004 for injections of morphine and Vicodin. (Id. at 357-60.) Plaintiff reported to Dr. Steinberg that her pain level was 10/10 and that her headaches occurred daily. (Id. at 142.) Either the medications did not improve the headache symptoms, or caused dizziness, nausea and vomiting.

        These numerous references to the record also contradict the ALJ's statement that "[t]he record does not show that the claimant reported that her pain medication is ineffective or that it causes any significant side effects, and in fact, she admitted her headaches are improved

---

[6] Somewhat inconsistently, plaintiff testified at hearing that she suffers about twenty severe headaches per month. (Tr. at 405-06.)

with medication." (Id. at 22.) Although plaintiff did report at times that her headaches improved with medication, those reports are sporadic and improvement was minimal. (Id. at 251) (only ten percent improvement with Imitrex), (id. at 344) (only minimal improvement with Indocin), (id. at 352) (significant pruritis but when morphine decreased pain is worse), (id. at 354) (terrible reaction to Effexor which was tolerated poorly and did not control depression or pain), (id. at 369) (Vicodin not helping much), (id. at 373) (dizziness may be related to medication; also experiencing nausea). Cf. (tr. at 348-50) (denies nausea or vomiting), (id. at 373) (Vicodin does help headaches significantly).

The ALJ additionally reasoned that due to plaintiff's sporadic work history, if she were to receive disability benefits, the yearly amount would surpass the amount of earnings she received in any year since 1992, and therefore she had no incentive to return to work. (Id. at 22.) This fact may normally be considered in assessing plaintiff's credibility, Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (lack of motivation to work in past relevant factor in credibility determination), but plaintiff's intervening motor vehicle accident resulting in aneurysm surgery, and objective evidence of second aneurysm tend to negate this reasoning. Furthermore, as pointed out by plaintiff, "the finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility." SSR 96-7p.

Of concern in the record is an incident involving plaintiff's treating physician in which plaintiff filled a prescription for Vicodin at two different pharmacies two days apart. Plaintiff said it was the doctor's fault because she approved a refill and then wrote a another prescription two days later. (Tr. at 362.) Dr. Truelove informed plaintiff that she violated the terms of her pain treatment agreement and therefore this medical office would no longer prescribe her narcotics. (Id.) It was elsewhere noted that plaintiff used up sixty pills of Vicodin in two weeks and ran out of her prescription amount too early. (Id. at 371.) The physician advised plaintiff about the possibility of rebound headaches from using too much Vicodin. (Id.)

It is unclear whether plaintiff's pain is so intense, as she describes, that she takes more medicine than prescribed in order to ease it, or whether she is engaging in some sort of drug seeking behavior. In this regard it should be noted that a toxicology report, dated March 9, 2004, was positive for methamphetamine and marijuana. When questioned, plaintiff admitted that she used drugs recreationally but "it wasn't a habit-forming thing." (Id. at 387-88.)

"[W]here the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited . . . that testimony is . . . credited as a matter of law." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (citations and internal quotations omitted). Nevertheless, in this case it is not clear that plaintiff would be disabled if her testimony were credited. There are just too many gaps in the record to make such a determination. Plaintiff's headaches have been alternately described as tension and migraine headaches. (Tr. at 225.) There has been no diagnostic testing, other than the initial surgery on plaintiff's aneurysm. Even the consulting physician, Dr. McIntire, did not discuss plaintiff's headaches, which appear to be her main source of disability. Although there is an objective source of plaintiff's pain, there may be a concern regarding drug seeking behavior. Therefore, this action will be remanded for further development of the record in regard to plaintiff's headaches and effectiveness of medication in controlling their pain, including diagnostic studies as necessary.[7]

B. Testimony of Plaintiff's Lay Witness

Plaintiff takes issue with the ALJ's treatment of the testimony of plaintiff's husband, Glen Lane. An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony

---

[7] Plaintiff's allegation of error in the hypothetical to the vocational expert will not be addressed due to the remand.

and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)).  Similar to the ALJ's role in evaluating the testimony of a claimant, when evaluating the testimony of a lay witness "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The Ninth Circuit holds that the ALJ must properly discuss lay witness testimony, and that any failure to do so is not harmless unless no reasonable ALJ, when fully crediting the testimony, could have come to a different disability determination. Stout v. Commissioner, 454 F.3d 1050, 1053 (9th Cir. 2006).

In this case, the ALJ stated that he considered the statements in the record and at the hearing by plaintiff's spouse.  He determined to give them little weight, however, due to "the paucity of objective evidence." (Id. at 24.)  Mr. Lane's testimony was that plaintiff has daily headaches, and experiences severe headaches three to four times a week, which result in loss of balance, dizziness, blurred vision, and sensitivity to light and noise.  (Tr. at 409-10, 419.)  He stated that medication only helps if the headaches are not bad, but that she has had to go to the emergency room when they are bad.  The last such visit was four months before the hearing. (Id. at 411.)  Plaintiff does not take medication as a prophylactic because it caused side effects such as nausea and vomiting.  (Id. at 412.)  She takes either Vicodin or hydrocodone, between two and five pills a day. (Id.)  Plaintiff either stays home all day, or Mr. Lane brings her to her mother's house so her mother can keep an eye on her. (Id. at 416.)  He testified that plaintiff cooks meals, and takes care of her personal needs, but not on a regular basis due to her headaches.  Family and friends visit her as she does not drive. (Id. at 416-17.)

Plaintiff incorrectly presumes that the standards applicable for judging credibility of a claimant apply to lay witness testimony.  In assessing such testimony, the ALJ is required only to supply a germane reason in disregarding such testimony.

11

1   Here, the ALJ's stated explanation for rejecting Mr. Lane's testimony, that there
2 was a lack of objective evidence to support it, was a germane reason. See Lewis v. Apfel, 236
3 F.3d 503 (9th Cir. 2001) (finding rejection of lay witness testimony as conflicting with medical
4 evidence to be germane reason). Because the ALJ was not silent in regard to this witness
5 testimony, the Stout standard is not required to be applied. It is the ALJ's province to assess the
6 testimony of witnesses who appear at hearing. Fair v. Bowen, 885 F.2d 597, 604 (9th Cir.
7 1989). Nevertheless, after remand for further development of the record, the ALJ may determine
8 to reassess this witness testimony.

CONCLUSION

If additional administrative proceedings would remedy the defects in the decision, remand is appropriate. Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); Barbato v. Commissioner of Social Security Admin., 923 F. Supp. 1273, 1277-78 (C.D. Cal. 1996). The court concludes, as did Barbato, that this case should be remanded for further administrative proceedings to enable the ALJ to obtain a more complete record, and to avoid the possibility of an inequitable result. Nothing the court has stated herein should be taken as an opinion that plaintiff is, in fact, unable to work at any level.

In sum, the court finds the ALJ's assessment is not fully supported by substantial evidence in the record or based on the proper legal standards. Accordingly, plaintiff's Motion for Judgment on the Pleadings is **GRANTED IN PART**, the Commissioner's Cross Motion for Summary Judgment is DENIED, and the Clerk is directed to enter Judgment for the plaintiff. This matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. §405(g) for further findings in accordance with this order.

DATED: 7/31/07                           /s/ Gregory G. Hollows

                                         GREGORY G. HOLLOWS
                                         U.S. MAGISTRATE JUDGE

GGH/076
Lane0806.ss.wpd